**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

DEBORAH WHITESIDE                                                                    PLAINTIFF

v.                                      2:13CV166-JLH-JJV

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration                                                                       DEFENDANT

<u>**RECOMMENDED DISPOSITION**</u>

<u>**INSTRUCTIONS**</u>

The following recommended disposition was prepared for United States District Judge J.

Leon Holmes.  A party to this dispute may object to this recommendation in writing.  An objection

must be specific and state the factual and/or legal basis for the objection.  An objection to a factual

finding must identify the finding and the evidence supporting the objection.  Objections must be filed

with the Clerk of the Court no later than 14 days from the date of this recommendation.[1]  The

objecting party must serve the opposing party with a copy of an objection.  Failing to object within

14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Holmes may

adopt the recommended disposition without independently reviewing the record evidence.  An

objecting party who seeks to submit new, different, or additional evidence, or to obtain a hearing for

that purpose, must address the following matters as part of written objections: (1) why the record

before the magistrate judge was inadequate, (2) why the evidence was not presented to the magistrate

judge, and (3) details and/or copies of any testimony and/or documents to be proffered at a hearing.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right
to de novo review and to appeal magistrate judge's findings of fact).

Based on this submission, Judge Holmes will determine the need for a hearing.

## REASONING FOR RECOMMENDED DISPOSITION

Deborah Whiteside seeks judicial review of the denial of her application for supplemental security income (SSI).[3]  Ms. Whiteside was forty-three years old when she filed the application in this case.  She is the guardian of seven children.  Six of the children receive SSI for disability; one child receives survivor's benefits.[4]  Whiteside bases her claim on depression, seizures, arthritis, back pain, and heart problems.[5]

**The Commissioner's decision**.  The Administrative Law Judge (ALJ) determined Ms. Whiteside has severe impairments – degenerative disc disease in the neck and low back, atypical seizure disorder, obesity, and depressive disorder[6] – but she can do some light work.[7]  Because a vocational expert identified available work for a person with Ms. Whiteside's impairments,[8] the ALJ determined she is not disabled and denied the application.[9]

After the Appeals Council denied a request for review,[10] the ALJ's decision became a final decision for judicial review.[11]  Ms. Whiteside filed this case to challenge the decision.[12]  In reviewing

---

[3]SSA record at p. 128.

[4]*Id*. at pp. 34-37, 165 & 344.  *See also* docket entry # 1.

[5]SSA record at p. 146.

[6]*Id*. at p. 13.

[7]*Id*. at p. 15.

[8]*Id*. at p. 50.

[9]*Id*. at p. 19.

[10]*Id*. at p. 1.

[11]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal

the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13]

**Ms. Whiteside's allegations**.  Ms. Whiteside states she meets listings 1.02 (dysfunction of a joint) and 1.04 (disorders of the spine) due to herniated discs and an inability to ambulate.  She challenges the ALJ's evaluation of her credibility and the determination about her ability to work.  She maintains that chronic pain, seizures, and depression prevent her from working.  She contends the ALJ should have relied on her GAF (global assessment of functioning) scores.  She says she didn't receive a full and fair hearing.  For these reasons, she contends substantial evidence does not support the ALJ's decision.[14]

**Applicable legal principles**.  For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to show Ms. Whiteside can do some light work.[15]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[16]  The ALJ placed the following limits on light work: (1) no lifting more than ten pounds overhead, (2) no climbing ladders/scaffolds, operating vehicles, or working where

---

only final decisions).

[12]Docket entry # 1.

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]Docket entry # 9.

[15]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").

[16]20 C.F.R. § 416.967(b).

a risk of falling would cause serious injury, and (3) simple tasks requiring reasoning level 2 or less.[17]
The Court must consider whether a reasonable mind would find the evidence adequate to show Ms.
Whiteside can work within these limitations.

**Back and neck pain**.  Ms. Whiteside alleges that constant, severe back pain prevents her
from working.  She testified that her back pain is so bad that, at times, she cannot walk; she can stand
in a check-out line for only two to three minutes.[18]  Diagnostic imaging of the back does show a disc
bulge at L4/5 with consequential right foramina narrowing, and degenerative changes in the facets
at L4/5 and L5/S1 bilaterally.[19]  And imaging of the neck shows soft tissue herniation in foramen on
right at C7-T1 with degenerative changes causing multilevel left sided neuroforaminal narrowing.[20]
While these findings support her complaints of back and neck pain, they do not support an allegation
of disabling pain.  According to the pain specialist, Whiteside's pain "has a treatable cause."[21]  Pain
"which can be controlled by treatment or medication is not considered disabling."[22]  During an
emergency room visit for back pain, Whiteside got on and off the exam table without difficulty.[23]

Additionally, the agency medical consultants opined that Whiteside can do light work.[24]  The
record includes no medical findings implicating the requirements for listings 1.02 or 1.04.  Ms.

---

[17]SSA record at p. 15.

[18]*Id.* at p. 47.

[19]SSA record at p. 235.

[20]*Id.* at p. 230.

[21]*Id.* at p. 232 (asking for letter to support SSI application).

[22]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[23]SSA record at p. 297.

[24]*Id.* at pp. 478-85 & 508.

Whiteside may walk slowly,[25] but nothing shows she cannot ambulate effectively.   The ALJ's reduction to light work responds to Ms. Whiteside's weight and back pain and the restriction on working overhead responds to her complaints of neck pain.

**Seizures**.  Ms. Whiteside claims she has had seizures all her life.[26]  She takes anti-seizure medication.[27]  Her neurologist found nothing explaining her reported symptoms.[28]  Diagnostic testing for epilepsy was negative.[29]  The neurologist wondered if Ms. Whiteside experiences pseudoseizures – symptoms that appear as an epileptic seizure but having psychological causes – rather than actual seizures.[30]  The neurologist recommended evaluation by the epilepsy center,[31] but she did not follow up.  Ms. Whiteside's failure to follow medical advice without good reason bars her from obtaining disability benefits.[32]

Considering Ms. Whiteside reported a seizure every other day,[33] the failure to follow up with

---

[25]*Id*. at p. 286.

[26]*Id*. at p. 283.

[27]*Id*. at p. 283.

[28]*Id*. at p. 284.

[29]*Id*. at p. 287.

[30]*Id*. at p. 284.

[31]*Id*. at p. 286.

[32]*See Tome v. Schweiker*, 724 F.2d 711, 713-14 (8th Cir. 1984) ("The Secretary's regulations provide that a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits.").  *See also* 20 C.F.R. § § 404.1530 & 416.930 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

[33]SSA record at p. 286.

the recommended specialist weighs against her credibility.[34]  A person who has seizures as frequently as Ms. Whiteside reports is not permitted to drive; it is unlikely a person who has seizures every other day can care for six disabled children.  Ms. Whiteside says she doesn't watch her nephew's football games because she doesn't know when she will have a seizure,[35] but she still drives.  The inconsistencies between her allegations and her actions support the ALJ's credibility evaluation.[36]

After reviewing the medical evidence, medical experts found it unclear whether Ms. Whiteside has a bonafide seizure disorder.[37]  To the extent she has seizures, the ALJ's restrictions on climbing, driving, and falling risks respond to those symptoms.  A reasonable mind would accept the evidence as adequate to show Ms. Whiteside can work within the ALJ's parameters.

**Depression**.  During the relevant time period, Ms. Whiteside received mental health treatment for depression: psychotropic medication and individual therapy.  Treatment notes reflect complaints of stress from taking care of disabled children, legal proceedings involving the children's mother, and worrying about her SSI application.[38]  She didn't appear overtly depressed to her

---

[34]*Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

[35]SSA record at p. 43.

[36]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

[37]SSA record at p. 485.

[38]*See e.g., id.* at p. 401 (on Jan. 7, 2011, really stressed about pending SSI application; her representative advised her to reapply; things are stressful with the children and dealing with mom's visitation); p. 399 (on Jan. 14, 2011, things are worse with the boys since they went to court; feels depressed due to problems with children); p. 397 (on Jan. 21, 2011, very stressed; two children are stealing and lying; trying to make sure the kids have everything they need but nothing seems to work); p. 395 (on Jan. 28, 2011, under a lot of stress; oldest boy is argumentative; things worse since kids went to court over visitation with mom); & p. 391 (on Feb. 18, 2011, children are getting into trouble in school and disrespecting her).

doctor.[39]  She appeared disinterested in efforts to treat her.[40]

After reviewing treatment records – which included GAF scores – medical experts opined that she can do unskilled work involving few variables.[41]  Ms. Whiteside's scores suggest serious problems, but her ability to care for seven children indicates no serious impairment of social or occupational functioning.  The ALJ correctly observed that treatment notes do not support the low scores.[42]  A reasonable mind would accept the evidence of mental impairment as adequate to show Whiteside can do unskilled work involving simple tasks requiring reasoning level 2 or less.

**Vocational evidence**.  The ALJ asked a vocational expert about available work for a person with Ms. Whiteside's impairments.[43]  The vocational expert identified ticket taker and garment folder.[44]  The vocational evidence shows work exists that she can do; Ms. Whiteside is not disabled under social security disability law.

**Administrative Hearing**.  The record provides no basis for Ms. Whiteside's argument about not receiving a full and fair hearing.  At the outset of this case, Ms. Whiteside chose her long-time caseworker to represent her.[45]  The ALJ obtained her treatment records and asked for expert medical opinions.  Ms. Whiteside confirmed she wanted the caseworker to represent her at the hearing.[46]  The

---

[39]*Id*. at p. 489.

[40]*Id*.

[41]*Id*. at pp. 451 & 504.

[42]*Id*. at p. 17.

[43]*Id*. at p. 49.

[44]*Id*. at p. 50.

[45]SSA record at p. 84.

[46]*Id*. at p. 27.

ALJ questioned Ms. Whiteside about her impairments and questioned a vocational expert about available work.   The ALJ also permitted Ms. Whiteside's caseworker to question her and the vocational expert.[47]   Accordingly, the Court concludes these proceedings were fair.

## **RECOMMENDED DISPOSITION**

Viewed as a whole, there is substantial evidence to support the ALJ's decision.   The ALJ made no legal error.   Accordingly, the Court recommends AFFIRMING the Commissioner's decision and dismissing Ms. Whiteside's Complaint (docket entry # 2) with prejudice.

DATED this 15th day of August, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

---

[47]*Id*. at pp. 48-49 & 51.